Mr. Luebke, we'll hear from you first. Thank you, Your Honor. May it please the Court, I'm Assistant Attorney General Joseph Carl Luebke. I'm here today on behalf of Dexter Payne, Director of the Arkansas Division of Correction. This is a capital habeas case. Nearly thirty years ago, Petitioner Ray Dansby shot and killed his ex-wife, Brenda, and her boyfriend, Ronnie Kimball. Ray and Brenda's eight-year-old son, Justin Dansby, witnessed these murders. The jury found Ray Dansby guilty of two counts of capital murder, sentenced him to death on both counts. After eighteen years of federal habeas litigation, including two prior opinions from this Court, all that remains for this Court to consider today are two claims from Dansby's second amended petition. A Confrontation Clause Claim, and a Prosecutorial Misconduct Claim, which he terms as a Brady Who Claim. Both of these claims involve either the exclusion of or alleged suppression of evidence to impeach State's witness, Larry McDuffie, who testified to Ray Dansby's jailhouse confession. There's one thing I want to emphasize for the Court today. Further impeachment of Larry McDuffie would not have changed the outcome of Ray Dansby's trial. Larry McDuffie was one of four witnesses to give an account of the murders to the jury. He was one of four witnesses to provide a statement from Ray Dansby with regard to the start of the murders. He was one of two witnesses to provide Dansby's jailhouse confession, and one of five witnesses in support of just one of the three aggravating circumstances justifying the sentence of death found by the jury. Two of those aggravating circumstances remain undisputed and are not at issue here today on the field, and there were no mitigating circumstances found by the jury. Further, Larry McDuffie's credibility was thoroughly challenged at trial. Dansby was able to show that Larry McDuffie was a contracted police informant, having signed a confidential informant agreement with the police prior to getting Ray Dansby's testimony. He was able to show that Larry McDuffie had received a reduced bond in his release from jail in exchange for testifying as to Ray Dansby's confession, providing that to police. He was able to show that McDuffie's testimony was contradicted by the eyewitness testimony, the physical evidence, and the other witness to the jailhouse confession. Simply put, Larry McDuffie is not the reason that Ray Dansby is on the death row. Because some of the issues on appeal are going to involve a bit of factual analysis, a brief recitation of the facts helpful to provide some context. Facts leading to the murder are these. On August 24, 1992, Dansby was due to appear in municipal court in El Dorado on a charge of assault brought by his ex-wife Brenda. Rather than going to court, he went to court. According to a statement to police, he went there to try to see if she would drop to work out the charges. He said an argument ensued and he, quote, went to shooting. Although Dansby did not provide the specifics to police of what happened after that, two eyewitnesses were able to paint a picture of these murders for the jury. Those were Dansby's eight-year-old son, Justin, and Greg Riggins, a neighbor from across the street. They testified to the following. Dansby arrived just as Brenda was pulling up in her car as she had gone to the store to get some orange juice for her son, Justin. As Dansby walked up, he ordered Brenda out of the car. A physical altercation happened and he knocked Brenda to the ground, picked up her .38 revolver, and shot her. He then paused for several seconds and watched as Brenda tried to get back up, Justin standing feet away on the front porch, and shot her again in the head. She fell flat. After shooting Brenda, Dansby went into the house and shot an unarmed rowdy Kimball in the chest in the living room. Kimball scrambled for cover and tried to retrieve his .380 pistol from underneath the couch. He tried to return fire. This time, Justin was back in the house and sitting in his seat. He pulled his feet up off the ground because he was concerned that he might be shot during the encounter. Kimball's gun produced only clicking sounds. He was unable to fire because the gun was jammed. There was no evidence that his gun ever fired. Dansby continued to shoot Kimball, chased him down the hallway, and then once he was on the ground, kicked him twice, spoke to him. After witnessing his father shoot, kick, and taunt Kimball, Justin went outside and motionless with blood all over her neck. He described that to the jury. At that time, Dansby came out, pulled Justin away from his dead mother, leaving that as his lasting image of his mother, and took him to flee with him. Counsel, you had argued both today and in your brief that further cross-examination of McDuffie wouldn't have made any difference. What I'd like to discuss with you is the district court stated that his testimony was the only evidence supporting the especially depraved aggravating circumstance. Could you summarize for us what you believe to be other evidence that also supports that aggravator? Well, first of all, Your Honor, I think it's important to note that the aggravator is cruel or depraved, and both the district court and Dansby focused only on the depraved nature. The jury was instructed both on the murder being proven in a cruel manner, and it is in the statute and in the jury's instruction disjunctive. The state only needed to prove one of those two. Cruel involves causing your victim's mental anguish, giving them uncertainty as to their ultimate fate. And here, the eyewitness testimony clearly demonstrates that that happened. Greg Shots at Brenda, Dansby paused to ponder his thoughts, and Brenda was trying to get back up. You're referring to the neighbor? Yes, I'm referring to the neighbor from across the street. He gave testimony as to pause. He said he paused as if Dansby was pondering his thoughts. He said it took about five or six seconds before he finalized the shot. The Arkansas Supreme Court has held in the Anderson case that even a few seconds for a victim to contemplate what might happen to them is sufficient to prove unusually cruel aggravation. Now, with regard to Ronnie Kimball, Justin testified about how Kimball fled for his life and was shot at multiple times by Ray Dansby, and Ray kicked him when he was down. I think that also goes to, so certainly there is uncertainty and mental anguish there as he's fleeing for his life, and that's from the eyewitness testimony. As to the depraved specifically, Your Honor, I think there's evidence to that without Larry McDuffie's testimony. Justin describes for the jury how Mr. Dansby kicked Ronnie Kimball while he was on the ground and mortally wounded, kicked him twice. When we're talking about depraved, it's an indifference to suffering of the victim. I think kicking somebody when they're down is kind of the standard for that. Certainly, I think the evidence would support that. What about forensic evidence? The forensic evidence? Yeah. As to this aggravator? As to this aggravator, certainly you have the autopsies, you have multiple gunshot wounds to each victim. There are two gunshot wounds to Brenda, one in the chest and one in the head. Brenda was certainly unarmed. She was shot with her own .38. That was from the ballistic evidence. As to forensic evidence, you have, you know, there were certainly six gunshot wounds to Ronnie Kimball. So the district court was very definitive in its statement that McDuffie's testimony was the only testimony supporting this aggravator. What deference, if any, do we owe to that statement by the district court? I don't think this Court owes that finding any deference. It's a legal finding on the habeas petition claim. And certainly, even if there was some deference entitled to it as a factual finding, where are they going? I think when you're looking at facts in the record that aren't discussed, certainly even looking at a comparative record. What if we agree with the district court and find that that was the sole evidence on that aggravating factor? My recollection is there were two additional aggravating factors. Would you explain how you think that matters, if at all? I think that matters a great deal. Two aggravating factors that were undisputed, those are the pattern of violence, prior violent crimes, specifically towards the victim we have here. That was a prior kidnapping or false imprisonment that was described to the jury by two eyewitnesses. And the risk of death to more than one victim, you know, that's killing two victims. But also, we have justice testimony about an eight-year-old boy, his own son, mother of the son of one of the victims, was in the line of fire. And so when you're looking at there being two aggravators, and particularly there being no mitigating evidence, Arkansas has a statute that says the Arkansas Supreme Court can re-weigh and find that harmless. And the case you're going to look to in the director's brief, specifically Jones v. Staker, two of them, there's a 2000 case. And what's striking when you read the Jones, the 2000 Jones case, is it's very brief and curt in saying it's specifically with regard to if cruel or depraved was improperly presented, we're not going to decide that. There were three aggravators here and no mitigators, and so the sentence of death should be confirmed. There's very little factual analysis to that, and it's almost a conclusion that, yes, the aggravators are going to outweigh the mitigators, but there aren't. And I think that's, that brings me to another point with regard to the district court's opinion. He notes that he had grave doubt as to whether or not there would be, whether or not the jury would have found any mitigating circumstances further across. And the record just doesn't support that. There were 14, between instructions and closing argument, there were 14 different proposed mitigating factors given to the jury. I've outlined those in the director's brief, and Larry McDuffie's testimony doesn't go to any of those. The best Ray Dansby can do, or Dansby did in his brief, is to say that Larry McDuffie prevented him from showing that these actions weren't in his character, specifically talking about how he was happy she was dead, trying to do that. But that ignores the entirety of the state's sentencing case, which was designed to show that not only were these not uncharacteristic, they were characteristic of who Ray Dansby was. This was an escalating cycle of violence towards his ex-wife. We have two prior violent crimes, and the jury got to hear from Brenda herself. It was recorded testimony from a prior criminal proceeding where she talked about how Ray Dansby broke in with a knife and then forced her to have sex, raped her. So, you know, the state's case showed that this, in fact, was exactly what it was. And Larry McDuffie has nothing to do with any of the mitigating factors offered to the jury, so any information about his criminal history wouldn't be of aid to him. Now, this whole discussion on whether or not there's grave doubt on any of the aggravating circumstances or mitigating factors, and I do believe that that grave doubt is a legal determination of this Court. It doesn't have to be a deference. Two, presupposes the idea that there was a confrontation clause there. There is not a confrontation clause there. I think this Court should find, first of all, that the district court erred by not giving the claim deference under the anti-terrorism effective death penalty of HEDPA. Secondly, that no matter how you review this, deferentially under HEDPA or de novo, the record just doesn't support the finding of a confrontation clause there. When we're talking about the confrontation clause issue, we're specifically looking at a ruling of the state trial court ruling, a state trial court, Judge Shepard, Eldorado. It was a three-part ruling. First, he excluded any evidence of Larry McDuffie's crimes that had not resulted in convictions, charged but unadjudicated crimes. Specifically, you had the pending felony cocaine charge, which is why Larry McDuffie was in jail to hear Ray Dansby's confession. And then there were two misdemeanor offenses committed in between the time he relayed the confession to police and when he testified in his trial. And second, and this is a part granted his request to cross-examine McDuffie with regard to potentially impeaching information. This included Larry McDuffie's relationship to law enforcement, his past as a C.I. and the fact that he had signed a contract with police, specifically offered to ask any questions about whether or not he had received any favorable treatment. Now, there were some questions asked, and certainly there were further questions that could have been asked, outlined within that, that simply weren't. But that doesn't mean there was a confrontation clause. In fact, there was only one question that was asked on cross-examination of Larry McDuffie that was objected to, and that was with regard to the felony cocaine charge that was specifically excluded by Judge Shepard's ruling. And finally, the third part of the ruling was it excluded Dansby's proffered extrinsic evidence, which was testimony from the municipal court judge, court clerks, probation officer, and a jailer about the handling of McDuffie's misdemeanors while he was out of jail, whether or not he was put in jail, whether or not he required to make a first appearance, whether or not they were in the process. The court found, the state trial court found that that evidence would require the jury to perform a few speculations and create a side show trial, so it excluded that evidence that was proffered. On direct appeal, the Arkansas Supreme Court noted that this, quote, well-reasoned ruling was correct. And so, you know, turning first to the AEDPA piece of it, I think the easiest place to look at how to handle this on AEDPA is actually this Court's prior opinion in 2014, where it addressed another claim, Claim 1, of Dansby's Second Amended Petition, which was his sufficiency of the precedence claim. There, Dansby was trying to say that AEDPA shouldn't apply because the Court didn't specifically discuss due process, Supreme Court due process law. And this Court rejected that, noting that, you know, the Court doesn't have to cite to or even have knowledge of Supreme Court precedent as long as what it is saying is consistent with that. And I think that's how this Court should handle this Confrontation Clause claim. Because even though the Court didn't mention the Constitution, Sixth Amendment, or the Confrontation Clause, it did cite a Confrontation Clause case in its opinion. It adjudicated the claim. And, therefore, that ruling is entirely without deference. I think it should be true. What case was that, counsel? What are you talking about? The AEDPA case that the Court cited a Confrontation Clause case. Is that the Biggers case you're referring to? Yes, Your Honor. That's Biggers v. State. But I think the most telling part in the Arkansas Supreme Court's opinion as to an adjudication on merits is the fact that when you look at Dansby's Confrontation Clause claim from a Second Amendment petition, and you try to match it up with the Arkansas Supreme Court's opinion, it's the exact same thing. If you look at the direct appeal opinion, the Arkansas Supreme Court notes that the issue was whether the trial court erred in excluding evidence of all prior criminal activity of McDuffie, thereby precluding Dansby from presenting a complete picture on the issues of bias and credibility. And when you flip over to the Second Amendment petition, the claim there is that the trial court erred and violated his right to confrontation by refusing to permit Dansby to impeach McDuffie with highly probative evidence of bias and motive to lie, and then goes on to discuss, specifically, McDuffie's criminal history, prior pending felony complaint charge, and the misdemeanor arrests. Both the Arkansas Supreme Court and Dansby are defining the claim the exact same way. And so to say that there's an adjudication on the merit, not an adjudication on the merit, is not accurate. I think notably, if you look back at some of the earlier petitions before they were amended, Ray Dansby actually took the position that it did apply before amending that in the Second Amendment petition and taking away that, and going back on that position. So I think that's also telling. But no matter how this Court looks at that confrontation clause claim, it shouldn't find a confrontation clause error. As Your Honor mentioned earlier, the district court was concerned about the evidence that was excluded with regard to McDuffie. The State does not dispute that there was evidence excluded. That's the whole point of an evidentiary ruling. The problem is, is that when we're looking at the confrontation clause, and this is where I think that the district court erred, you're required to look at it in the context of the whole, not just look at what was excluded, but also look at what was permitted. It's Dansby's burden to prove that a reasonable jury would have received a significantly different impression of Larry McDuffie's credibility had the excluded evidence been allowed. The Supreme Court goes on to say in cases that a critical factor in determining whether a defendant's right to confrontation has been violated was whether the defendant had other ways to obtain the effect that the excluded examination allegedly had. So you have to look at what occurred. As I mentioned in my opening, Larry McDuffie was shown to be a police informant who got his reduced bond and release from jail in exchange for Dansby's confession. Additionally, there can be no better impeachment of McDuffie. Simple thoughts about misdemeanor crimes are not going to give the jury any different impression than what Jeff Talley did. Larry McDuffie specifically noted in his testimony when they said, was anybody else there to witness what Ray Dansby told you? He said, yeah, Jeff Talley. Jeff Talley then got on the stand and said, what Larry McDuffie said about what happened isn't true. There can be no better impeachment of that. I think another thing, and you look at, there were also showings of factual discrepancies. Larry McDuffie had Ray Dansby shooting Brenda with his own gun. Actually, it's interesting, McDuffie's account, Dansby tries to paint it as super favorable for the state, but his account actually cuts both that's different than the eyewitness testimony that Justin clearly states that Ronnie Kimball was unarmed when he was shot in the chest. Additionally, McDuffie is the only person who testifies that Brenda had her gun and was reaching for it when Ray Dansby shot her the first time. That only comes from McDuffie and that's helpful to Ray Dansby. So to say that this is a case where we're not disputing the fact that Ray Dansby confessed to Larry McDuffie, we're only disputing what was said during that confession. Ray Dansby himself put on a witness to testify to his own jailhouse confession and that witness, Jeff Talley, said that Ray took the gun away from Brenda and shot her. And so, you know, you have McDuffie testifying that Brenda has her gun and is reaching for it and you have Ray Dansby's own witness, Jeff Talley, saying Brenda doesn't have her gun. She's unarmed and Ray shot her with her gun. Counsel, could you switch issues here a little bit on the prosecutorial misconduct claims? My recollection is the district court based its ruling in part on a credibility determination of an evidentiary hearing prior to making that finding. Would you address that claim, please? Yes, certainly, Your Honor. The district court was not required to hold an evidentiary credibility. Dansby, he cites two cases involving motions for new trial under the federal rules of evidence and that is different than what we're looking for here in the habeas setting. We're in the habeas setting, whether or not there should be a hearing on something governed by 2254. And we have a claim here that wasn't factually developed in state court. It's under 2254E. It's not really entitled to an evidentiary hearing. But even if you look to the evidence, to the cases that Dansby cites, they note in there that the court, if they are familiar with the record, can make a credibility determination based on their familiarity with the record. This is a federal habeas case that's been going on for 18 years. I think there can be no dispute that the district court has a familiarity with the record. It was well briefed on the issue. It was entitled to make that credibility determination. That credibility determination is entitled to deference by this court. I will note that what's striking about it is to believe the whole basis of the affidavit. Larry McDuffie. And in there, he says that he was recruited to testify by the municipal court judge, George Van Hook. George Van Hook testified twice, once in a pretrial hearing and then once in proper testimony during trial. And both times, he said, Larry McDuffie approached me. So in order to believe Larry McDuffie's affidavit, you have to believe that a sitting municipal court judge perjured himself. And there's no reason and no evidence to support that other than Larry McDuffie saying it many years later. Additionally, Larry McDuffie's own lawyer also testified at that pretrial hearing and said, yes, it was Larry McDuffie who approached the court and prosecutors about this. So there are multiple witnesses and then we have a way after the fact affidavit. So, you know, based on that, I think that the court, the district court's credibility. At this time, I'll reserve the rest of my time. Very well. Thank you for your argument. Mr. Braden, we'll hear from you. Thank you. Thank you. May it please the court, my name is Scott Braden and it's my privilege today to represent Ray Dansby before you. Ray Dansby is on Arkansas' death row despite the argument of my learned friend here because of the false testimony of Larry McDuffie that was paid for by the favorable treatment and promises made to him by the state. The district court correctly granted habeas corpus relief on this issue. As you've heard, the state now tries to marginalize the testimony of Mr. McDuffie. But before the jury, the state argued McDuffie's testimony was key to both convicting Mr. Dansby and to sentencing Mr. Dansby to death. Prosecutors told the jury that if they had not found Mr. McDuffie credible, they would not be at the sentencing point of the trial. Mentioning Mr. McDuffie's name about 30 times more than any other witness in the closing arguments, their case for capital murder and a sentence of death rested on Mr. McDuffie. Had the prosecution disclosed its promises to Mr. McDuffie or had defense counsel been able to conduct a probing cross-examination about Mr. McDuffie's bias as guaranteed by the Constitution, the jury would not have convicted Mr. Dansby of capital murder. The jury would have been aware of the government's dealings with Mr. McDuffie and it would have been able to make a true assessment of this jailhouse snitch's testimony. The district court correctly recognized the harm caused by the confrontation clause, error, and granted relief but only as to sentencing. The district court was wrong when it denied relief as to the harm caused by the confrontation clause error to the determination of guilt and as to the denial of the Brady-Napoo error where the prosecution failed to disclose their dealings with Mr. McDuffie. So that's my intro. So I think I just want to address some of the issues that have been raised by the state and so I would like to talk, you'll bear with me just a minute to get through my kind of notes here. The issue of whether this confrontation clause, the Sixth Amendment error, was raised in the state court and resolved by the state court. It's beyond dispute that the question was raised or the issue was raised in the state court. This court found that twice, the district court has found that. So the question is, did the state court resolve the question? And I think what really gets muddled here in this is this problem of the difference between extrinsic evidence versus bias. And I think that what was presented to the Arkansas Supreme Court was not only the Sixth Amendment error under the confrontation clause, but the state evidentiary rule that prevented the introduction of extrinsic evidence to challenge a witness's credibility on the witness stand. And the state court opinion dealt exclusively with this issue of credibility. As a matter of fact, if you look at the state court opinion, you know, the heading that they used, I'm sorry, I don't remember it exactly, but it's something like the credibility of Mr. McNutt. And that was how they introduced this issue and that's how then they've been addressed. So counsel, I'm not sure I'm understanding. Are you arguing there's a difference between credibility, which was addressed, and bias, which was not? Or if you can go through that again. So my belief is, and if you look at the case of the Supreme Court cases about the right to confrontation, they all talk about being able to challenge or to show bias to a witness. So what is the bias of Larry McDuffie? Larry McDuffie was this jailhouse snitch, we all know that. That's not really a dispute. And he was expecting favors from the state. Now, admittedly, there's some debate about whether the state made those promises or not, but whether they made the promises or not, he was expecting that. And that goes to bias. Why was he testifying? Why did Larry McDuffie get on the witness stand and say all this about raving? And so wasn't there evidence introduced, impeachment evidence along those lines, that he was a paid informant, that he had informed in the past? Or I'm trying to highlight specifically what it is that was excluded here and why it makes a difference. Yes. Because there was quite a bit of impeachment evidence that came in, as I understand it, during the trial. Yes, there was some impeachment evidence that came in, but it wasn't relevant to the point before the jury. And what specifically is that point then? So had the trial lawyer been able to conduct a cross-examination that the Sixth Amendment would have allowed, the jury would have known that Larry McDuffie had a pending cocaine charge brought by the same prosecutor that was prosecuting Mr. Hill. They would have also heard that between the time that he was arrested and talked to Brady Ansby, he was released and had been arrested for a stabbing or some sort of barroom brawl, but hadn't been jailed. That he had violated the terms of this pretrial release and yet hadn't been arrested or had been stopped, but not arrested and put back in jail. Isn't that a difference in quantity, not quality? Because there was evidence in the record that he was working for the police, that he had been a, I think, been under a paid contract, that he had incentives to get favor from law enforcement. So that's essentially was admitted and some of that was excluded. And it seems to me it's just you're arguing a difference in quantity of evidence. And I'm not sure that gets you there. I disagree to the point with that because what Larry McDuffie told the jury is, I'm here out of the goodness of my heart. I'm not here because I'm a government informant. Yes, I have been in the past, but those are my other day. That's behind me. I'm here today, not because I'm a paid government informant or anything like that. That was in the past. So we're talking about today. And Ray Dansby, or I'm sorry, excuse me, Larry McDuffie got on the witness stand and told the jury, I'm a good guy and I'm here because out of the goodness of my heart. And had the defense lawyer been able to cross-examine Mr. McDuffie, she would have been able to show that that first statement is just not true. And then when you work your way through the rest of the stuff, she would have been able to show that Larry McDuffie was getting all sorts of special treatment from this prosecutor in this interim period after he made his statement and before he got up on the witness. And of course, he was trying to curry favor with the prosecutor. He didn't want to go back to jail. That's pretty obvious. But they would have heard about this stabbing that he didn't pay any consequences for, this bar room brawl and these violations of his pre-trial release agreement. And that is exactly the type of bias that the Supreme Court in Davis v. Alaska says is at the heart of the right to cross-examine. Counsel, I think the State is arguing that the ruling from the trial judge wasn't as restrictive as you make it out to be, that he did allow cross-examination and that perhaps some of the questions weren't asked. You're right about that, Your Honor. The ruling of the trial judge did allow some cross-examination and the trial lawyer did what she could with the tools that she had, but those tools were very limited. And if you, and I'm sure you've read the record, but when you go back and take another look at it, you'll see that she asked some questions. And then when she started asking about this event and Mr. McDuffie's treatment by this and the circuit judge sustained that objection and she had no place to go. And I think the State makes a lot out of the notion that, well, she only asked one question about this. But I think as you look through the record, you'll see that this issue had, the life of this issue had been wrung out of it through all the pretrial and limine motions. You know, as soon as the State let it be known that they were going to use the testimony of Larry McDuffie, the trial lawyer filed a motion to suppress and that immediately prompted a motion of lending from the State to prevent talking or asking questions of Larry McDuffie about his current charges. Why was he here now? She could ask all she wanted about what he'd done in the past and what he'd been in the past. And, you know, I think if he had said, well, I'm a paid government informant. I just do this all the time. This is how I make my living or something. I don't mean to sound flip, but if he'd said something like that, you know, that would have been different. But Larry McDuffie, under oath, in front of the jury, said, I'm here because I'm a good guy. I hate it that this happened. And so I'm just up here and I'm going to tell you this. So basically he's like, believe me, because I'm a good guy. And that we know now that just wasn't true. He was getting these special favors. And so then the issue of the state evidentiary, you know, and it's tough to wrap my head around this. It took me a while to kind of think this through. But so then the question is, extrinsic evidence. Can this witness be impeached with other evidence? And under the state evidentiary rules, you can't impeach a witness on this uncharged misconduct. But you certainly can ask them about this uncharged misconduct under the Sixth Amendment right of confirmation. And if you look at Rule 608, the evidentiary rule at the heart of the state court opinion, you'll see that, you know, it has this kind of savings clause in it that says, well, but, you know, this evidence is admissible if you're, I'm sorry, again, I don't remember the exact language. But basically, if the witness is lying, you can do nothing with this evidence. But otherwise, you can't do it. So if Mr. McDuffie had, if she had been able to conduct the cross-examination that the Sixth Amendment allows, and he lied about it, which he probably would have, then all of that evidence would have been admissible. But the judge didn't allow her to even ask the question to begin with. So she had no place to go. Had no, no, you know, there's no other avenues open to her but to try to just put in this extrinsic evidence, which is not admissible under the, under the, under the state evidentiary rule. Had she been able to do that, then, you know, she would have at least been able to challenge Mr. McDuffie to the jury. And so then, and so that is what the State court opinion is about, is this evidentiary decision of admissibility of extrinsic evidence, and not the issue of the Sixth Amendment right of confrontation, even though it had been presented in, you know, why they didn't address it. I don't know, but they didn't address it. So then I think the issue then comes to the harm, you know. What was the harm in this, in this violation of the Sixth Amendment? And, of course, the harm is, not to repeat myself, but I spelled out what the jury would have known. The jury would have known about Mr. McDuffie's treatment by the State for these offenses, not Mr. McDuffie's past conduct, and so forth. And I think that's why. Robertson, what proposed mitigating circumstances would have been impacted by the additional cross-examination of McDuffie? I'm glad you asked that, Judge. I, you know, that was next on my list here to talk about. So, and if you'll just bear with me just a second, let me just get into all this aggravator, mitigator stuff. Sure. So, so the, so the District Court said that Mr. McDuffie's testimony supported the cruel and deprived aggravating circumstance, and because of that, that harmed, that was the harm. And so, as to the sentencing. But, you know, I don't think that, I think it was a one aggravating circumstance. You know, I think, also, just as you asked, that Mr. McDuffie's testimony closed the door to a great deal of mitigation. So in Mr. Gansky's testimony. But, counsel, there were, there was a list of very specific proposed mitigating circumstances. Yes. And my question, because the jury unanimously found three aggravators, what proposed mitigating circumstances would have been impacted by the additional cross-examination? So Mr. McDuffie's testimony talked about how Mr. Gansky had, you know, had been, had acted with a great deal of intent. You know, that he planned to go there. He planned to shoot Mr. Kimball. He, he had, had planned to, or regretted that he didn't try to make it look like it had been a self-defense. But, but once the aggravator fell in here, and Mr. McDuffie's testimony would have been shown for the lie that it was, all of that would have not, not been present. And so, yes, you're right. There's some statutory mitigating circumstances about. But the multiple victims still would have been there, right? I mean. Sorry. I'm not using this particular language, but more than one victim aggravator would not be affected by that. Do you agree? No. I mean, yes. And the prior felonies that were, in fact, directed against one of the victims in this case would not have been affected by that. There are two aggravators remaining. And yes, that's not a dispute. But what is a dispute is what mitigation, as, as you asked, what mitigation would have been available. And, you know, the emotion, so there are several mitigating circumstances that talk about the, the emotional, you know, was this done under duress? And I think that, again, I'm sorry, I don't remember the exact language, but you can read them and see what I'm talking about. But, you know, this was a domestic dispute. There's, you know, there's, I don't think anybody debates that this was a domestic dispute between Mr. Dansby, his former wife, and her current boyfriend. And, you know, I think that, that had Mr. McDuffie's testimony been challenged or discredited, it would have opened the door to this, it would have opened the door, first off, to the fact that Mr. Dansby had, was acting in self-defense or not acting in self-defense in something less than capital murder. But also that, that these aggravating, or that these mitigating circumstances were now available. His mitigation case was that he was a good guy, basically, and that's what they tried to show. And that was totally, that was totally rebutted, totally taken away from him by Larry McDuffie, who made him out this monster as the state paints him. At least two other witnesses suggesting there was no self-defense here, right? You had the There were other witnesses that talked about that. And, you know, there was other witnesses that talked about, so for instance, Mr., sorry, I'm blanking on the name, Mr. Gimbledon, across the street neighbor, testified that, you know, in his testimony, he talked about how he saw Mr. Dansby go over to his wife who was on the ground, but he also testified that he saw Mr. Dansby ducking, and what he appeared to be ducking, and which would support the argument that he was, that Mr. Kimball, who was firing at Mr. Dansby, and that it was a debate between him, where the state made it out that Mr. Dansby went, you know, went with the intention of attacking Mr. Kimball, the boyfriend, and did just that. And instead, without Mr. McDuffie's testimony, there's certainly evidence that he was acting in self-defense, and totally undercut that self-defense argument, which could have been part of his mitigation, and could have been part of the mitigator, you know? And as I say, I think that the mental and emotional mitigating circumstances that were available to him were taken away by McDuffie's testimony. So not only does McDuffie's testimony cause the cruel and depraved aggravator to fall, but it opens the door for this other mitigating circumstance. Counsel, I understand your argument, but I'm looking through the list of proposed mitigating circumstances, and I just don't see any that are affected. I need you to be more specific. You're speaking in generalities, or maybe that's the answer. I don't know. Well, you know, I think that because of Mr. McDuffie's testimony, they couldn't work through that. They couldn't. You know, they had to rest on this argument that Mr. Dansby was a good guy, and the mitigating circumstances there could have been open to Mr. Dansby, but for the inability to cross-examine Mr. McDuffie and show his bias. You know, that's the question there, was the bias. The other thing that I—bear with me just one second—of the issue of an evidentiary hearing. So I know that there was some discussion about that, and I think the resolution of the prosecutorial misconduct, the Brady claim, without an evidentiary hearing was error on the part of the district judge. The state argues, well, the witnesses would have been these, you know, district court judges and lawyers and so forth, but, you know, what's the heart of this? So the district court said basically the same thing. Well, you'd have to get around these judges, but we were not given the opportunity, and there was no opportunity to explore this with these prosecutors, with the prosecutors at the heart of this. You know, I think one thing that would have really been able to help this was the evidentiary development of this Brady claim. So we presented what we had, and we asked to explore that more, and, you know, the only way to really explore that was through an evidentiary hearing, which the district court didn't. So the district court just assumed that all this testimony would have been true, and, you know, I'm not trying to undercut state court judges, but, you know, you never know. I mean, it happens, but we don't know that because we didn't have an evidentiary hearing. So I think it was error on the part of the district court to deny the Brady claim without evidentiary development. Thank you, Mr. Brady. Question on that evidentiary hearing point. Do you believe that Section 2254E2 of Title 28 regarding evidentiary hearings applies in this circumstance or not, if you've thought about it? So your question is whether 2254E2 prevents an evidentiary hearing at this point? Well, my question was whether it applies. Oh, I don't think, I don't think it applies. I don't think it applies because, first off, I don't think it applies because even though this, the issue has been presented, you know, I don't remember now whether the, I don't think the state court had resolved this. I mean, there's opportunities for the state court to resolve this under the Coram Novus Petition, which, you know, leaves this issue right for presentation to state court. You know, we've presented it here in federal court, but it certainly could be presented in state court and resolved there. So I don't think it's applicable, preventing a hearing, I don't think that's applicable at this point. Counsel, I want to follow up on the writ of Coram Novus. Is your argument that that's an unexhausted claim then? So I think that's one of our, that's one of our arguments is that, that the, that there are further state remedies available to. Okay, well, so you have a mixed petition for habeas here, right? Of exhausted and unexhausted claims. And my recollection is, and I haven't been doing this that long, that generally when there's a mixed petition of exhausted and unexhausted claims, that we dismiss that. So my question to you is, if you are presenting a mixed petition, and it's a question, are you? And if you are, why shouldn't we dismiss it and reinstate, dismiss the writ and reinstate the death penalty? I think that issue has been resolved by the U.S. Supreme Court in Rines v. Weber, which talks about how under the ADPA, you know, dismissing a petition prevents the further development in federal court of whatever the state might do once the case has been sent, or once the petition's been dismissed, you can't file another petition. So under Rines v. Weber, the Supreme Court has said, well, if there is a mixed petition, so to speak, and there is at least some opportunity to develop that in state court, hold the habeas petition in abeyance, and let that happen, and that's what you mentioned. Do you agree that there's a diligence requirement for the writ, the state court writ here? There is a diligence requirement, and we've fulfilled that by presenting it to federal court, and under the state rules and the core notice procedure in the state court, pointing to the movement, which I think we cited in the briefs, we've met that. The state court has said as long as this is being presented basically in some court, some place, you're not resting on your hands, then your diligence requirement is met, and we certainly have been presenting this, the writing here for a number of years in trying to develop it. So I think we've been diligent. Okay. I'm happy to answer any other questions, but otherwise, I would ask that you affirm the district court's grant of relief as to the sentencing and reverse the district court as far as its denial of relief as to the conviction and the Brady claim. Thank you very much. Thank you. Thank you. All right, Mr. Luebke, we'll hear from you in response. Thank you, Your Honor. First of all, I'd like to say that there are domestic disturbances and then there are double capital murders. Those are two different things. What we have here is a brutal double capital murder. I think it can be painted as a domestic disturbance. That may be how it started, but that's certainly not how it ended. I think one of the things that I forgot to do when I was first up here, and it is relevant, is I talked about what impeachment of Larry McGuffey was allowed, but I didn't compare that to the impeachment that was allegedly excluded. And there was a lot of talk about favorable deals and how his misdemeanor charges were handled. But if those issues were actually probed, as outlined in the brief, the effect of it would have been very underwhelming. What the jury would have heard is that prior to relaying Gansby's confession to the police, Larry McGuffey had a deal for five years probation on his cocaine charge, and that is ultimately what he received. In fact, if we went further back on that, the jury would hear that he was set to have that charge dismissed or not brought, but he refused to cooperate with police. So he in fact had a better deal than what he got and was lost. So the idea that he got some sort of favorable deal on these charges wouldn't have been borne out if the cross-examination was allowed. The other pieces, the misdemeanor charges, Brade Gansby continues throughout his brief, and Mr. Braden did it again today, to get up here and say that he was not jailed. That just simply isn't true, and his own expanded record that he brought with regard to these claims proves that it's not true. Now, I regret it's not in the appendix, but I think it's at docket number 50 is where the expanded record is or something with regard to there. There is an order from Judge Shepard, who was the trial judge in both Gansby and McGuffey's case, revoking McGuffey's bond with regard to the violations of the bond that happened and ordering him to go to jail. And McGuffey in his own affidavit notes that he was held in jail after the incident at the bar happened. That is McGuffey's own testimony that they're attempting to rely on for their claims. So the idea that they would have been, if they had been allowed to explore this, it would have significantly changed the jury's outcome or the jury's perception of Larry McGuffey just simply isn't true. It's very underwhelming. What you find is that he received a worse plea deal than what he had. The plea deal is not contingent at all on testifying in Gansby's trial, and when he violated his conditions, his bond was revoked and he was jailed. That's what it would have shown. I don't see how that would have given the jury a significantly different impression of McGuffey's credibility. And in fact, he was probably better off by showing that he was paid informant and that he had received the bond reduction and all the inconsistencies, including Jeff Talley's testimony, Talley's best evidence of impeachment of Larry McGuffey. So I think it goes to what I we're talking about here today would not have changed the jury's perception of Larry McGuffey. Anything, any further evidence would not have changed. Larry McGuffey is not the reason. Was McGuffey jailed at Pine Bluff after the stabbing incident? That's what he's testified to in his affidavit. And that's understandable, Your Honor, because he had a pending felony charge that was explained in the pretrial hearing that felony defendants and misdemeanor defendants are kept in separate pods. And what's important is not the charge you're going there on, but the charges that you have. So he would have been put in the felony pod where Ray Gansby is. And understandably, they didn't want to put him in jail with Ray Gansby. That's why he was jailed. So the director is asking this court to reverse finding the confrontation positive. Counsel, I just want to clear up, following up on Judge Colleton's question to your friend. Do you think 2254E2 applies in this case? I think it has to. You're talking about having a hearing in a habeas case. So the provision says if the applicant has failed to develop the factual basis of the claim in state court, and you would argue that that occurred here? That is exactly right. It is undisputed that the claim was never presented. Well, could you elaborate on that? Because typically a Brady claim would not be subject to 2254E2 on the view that it's not the prisoner's fault that he failed to develop because the state suppressed the information that he wants to raise. Are you arguing that Gansby had an opportunity to develop this Brady-Napoo claim in state court? And if so, can you explain how so? Certainly, Your Honor. How he could have done it is, nothing has prevented him at any point in time from choosing to litigate in state court and federal court at the same time. He could have presented a quorum novus petition the minute he got Larry McDuffie's affidavit. It's a simple briefing that follows a 10-day response, and he would have had an opinion from the Arkansas Supreme Court the minute he had it. Instead, he held on to that, didn't reveal that affidavit for nearly a decade, I think, like eight years or something like that, before finally, when he was on appeal, had to say to McDuffie. It's just, certainly, he had the potential to go to quorum novus. Thank you. All right. Thank you to both counsel. The cases are submitted. The court will file a decision in due course.